IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**FILED**
FEB 1 4 2001
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

|  |  |
|---|---|
| STURM RUGER & CO., INC., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> ALEXIS M. HERMAN, Secretary ) <br> U.S. Department of Labor, ) <br> and CHARLES M. JEFFRESS, ) <br> Assistant Secretary of Labor ) <br> for Occupational Health and Safety, ) <br> ) <br> Defendants. ) <br> ) | Civil Action No. 1:00-cv-01026 (ESH) |

## MEMORANDUM OPINION

Before the Court are defendants' Motion To Dismiss or, Alternatively, for Summary Judgment, and plaintiff's Cross Motion for Summary Judgment. Plaintiff is attacking the legality of the Data Collection Initiative that defendants initiated in order to gather information regarding the rate of workplace injuries and illnesses, and the average number of employees and total hours worked. In response defendants have moved to dismiss on the grounds that this Court concludes that it lacks jurisdiction, and therefore, the complaint will be dismissed with prejudice.

### BACKGROUND

Plaintiff, a Delaware corporation with businesses located in various states, has brought this suit against the Secretary of Labor and the Assistant Secretary of Labor for Occupational Safety and Health in their capacities as the administrators of the Occupational Safety and Health Act of 1970, 29 U.S.C. §§ 651 *et seq.*, ("OSH Act"). Under the statute, the Secretary of Labor is responsible for administering the Act; she has delegated most of these duties to the Assistant



Secretary for Occupational Safety and Health, who heads the Occupational Safety and Health Administration ("OSHA").

## A.     Statutory and Regulatory Framework

Congress enacted the OSH Act "to assure so far as possible every working man and woman in the Nation safe and healthful working conditions and to preserve our human resources." 29 U.S.C. § 651(b). To that end, the Act "provid[ed] for appropriate reporting procedures with respect to occupational safety and health." § 651(b)(12). Specifically, the Act requires that "[e]ach employer shall make, keep and preserve . . . such records regarding his activities relating to this chapter as the Secretary . . . may prescribe by regulation [including those] requiring employers to maintain accurate records of, and to make periodic reports on, work-related deaths, injuries and illnesses . . . ." §§ 657 (c)(1)-(2). "On the basis of the records kept pursuant to section 657(c) . . . employers shall file such reports with the Secretary as he shall prescribe by regulation . . . ." § 673(e).

The OSH Act also specifies procedures for its enforcement and the administrative review thereof. When the Secretary believes that an employer has violated the Act or any regulation or standard that was passed pursuant to it, she issues a citation to the offending party. § 658. The employer may then contest the citation before the Occupational Safety and Health Review Commission ("OSHRC" or "Commission"), an independent adjudicatory body. §§ 659(c), 661. The Commission refers initial proceedings to an Administrative Law Judge ("ALJ"), who hears the case and issues a decision. § 661(j). The full OSHRC, on the petition of a party or the initiative of any Commissioner, may review and modify the decision of the ALJ. § 661(j); 29 C.F.R. § 2200.91(b). The Secretary or any person adversely affected or aggrieved by a final

order of the Commission may petition the appropriate United States Court of Appeals for review. 29 U.S.C. § 660.

Pursuant to the OSH Act, OSHA requires employers to maintain and report certain information on occupational injuries and illnesses. See 29 U.S.C. §§ 657, 673. In 1995 and 1996, OSHA adopted a Data Collection Initiative ("DCI"), which was designed to gather some of this data. Under the DCI, OSHA sends selected employers a survey form requesting information regarding the average number of employees and total number of hours worked by the employees over a specified period, as well as the number of employee injuries and illnesses that occurred during that time. Using this information, OSHA determines the injury/illness incidence rate for each establishment, which in turn is used to decide whether to target the employer for an intervention effort, such as an inspection or referral for assistance in reducing workplace injuries and illnesses.

**B.    The ATA Case**

When the DCI was first implemented in 1995, an OSHA regulation required employers to maintain and make available the requested illness and injury data, but not information on the average number of employees and total employee hours. In American Trucking Ass'ns., Inc. v. Reich, 955 F. Supp. 4 (D.D.C. 1997) [*hereinafter* ATA], the American Trucking Association and two other employers successfully challenged the DCI survey. There, the Court found that OSHA "must promulgate a regulation before purporting to command employers to file reports like the one at issue here. . . . Because the agency's action was taken without 'observance of procedure required by law,' it violates the Administrative Procedure Act." Id. at 7 (citing 5 U.S.C. § 706(2)(D)).

In response, OSHA promulgated 29 C.F.R. § 1904.17 to authorize its annual DCI. The regulation provides in part:

> Each employer shall, upon receipt of OSHA's Annual Survey Form, report to OSHA or OSHA's designee the number of workers it employed and the number of hours worked by its employees for periods designated in the Survey Form and such information as OSHA may request from records required to be created and maintained pursuant to 29 CFR part 1904.

29 C.F.R. § 1904.17(a).

### C. Prior Proceedings Involving Sturm Ruger

Plaintiff Sturm Ruger is a gun manufacturer with a facility consisting of several buildings located in Newport, New Hampshire. The Pine Tree Castings Division ("Pine Tree") is a division of Sturm Ruger that manufactures steel investment castings. Pine Tree is located in one of the three buildings in the Newport facility; it employs approximately one-quarter of Sturm Ruger's nearly 1,150 workers. Roughly sixty percent of the castings that Pine Tree manufactures are used in Sturm Ruger guns; the rest are sold to third parties. Sturm Ruger & Co. v. United States, 2000 WL 36931, at *1 (D.N.H. Jan. 22, 1999).

On April 22, 1997, as part of the DCI, OSHA requested information from Sturm Ruger for Pine Tree. Sturm Ruger complied with the request and returned the completed survey to OSHA. Based on this information, on June 15, 1998, two OSHA compliance officers arrived at Pine Tree to inspect the facility. Sturm Ruger refused to consent to the inspection. As a result, OSHA obtained a warrant to inspect Pine Tree. On July 6, OSHA officers attempted to execute the warrant but were prevented from doing so by Sturm Ruger employees. That same day, Sturm Ruger filed a motion in federal district court in New Hampshire to quash the warrant. Id. at 1-2.

In Sturm Ruger & Co. v. United States, supra, the district court denied Sturm Ruger's motion and enforced the warrant. Sturm Ruger appealed, seeking to stay the execution of the warrant. The First Circuit Court of Appeals denied the stay and OSHA executed the warrant. Sturm Ruger & Co. v. OSHA, 186 F.3d 63 (1st Cir. 1999). The inspection was completed, and OSHA announced that citations against Sturm Ruger might be forthcoming. In light of those developments, the Secretary moved to dismiss the appeal for failure to exhaust administrative remedies. Id. at 63. In its opposition, Sturm Ruger argued that while five of its six claims were subject to the exhaustion requirement, the remaining claim – a statutory challenge to the legality of the underlying DCI – should be addressed at that time. Id. at 64.

The First Circuit disagreed, holding that exhaustion of all claims was required for several reasons.

> First, [Sturm Ruger] has not suggested that its claims [could] not be adequately adjudicated in the anticipated enforcement proceeding. Second, . . . it has not shown that requiring exhaustion would subject it to irreparable harm. Third, while some of the ordinary justifications for administrative exhaustion may not be pertinent here . . . others remain fully applicable (such as the protection of agency autonomy and the possibility that judicial involvement might become unnecessary). . . . Finally, at least as far as [Sturm Ruger] is concerned, a successful appeal following the exhaustion of administrative remedies would not, as it claims, constitute a "Pyrrhic victory."

Id. at 64-65 (internal citations omitted). Accordingly, the Court dismissed the appeal for failure to exhaust administrative remedies. Id. at 65.

Following the First Circuit's decision, OSHA issued citations to Sturm Ruger, which in turn contested them before the Commission in accordance with 29 U.S.C. §§ 659(e) and 661. There, Sturm Ruger moved to suppress all evidence arising out of the inspection on the grounds

5

that the illegality of the DCI tainted the inspection. One of the challenges that Sturm Ruger raised in the administrative proceedings is the same claim as it brings in this action -- that the DCI's request for employment data violates federal law because current OSHA regulations do not require that this data be created and maintained.

On July 5, 2000, an Administrative Law Judge (ALJ) denied Sturm Ruger's suppression motion. Secretary of Labor v. Sturm Ruger & Co., Inc., Pine Tree Castings Division, OSHCR Dkt Nos. 99-1873 & 99-1874 [*hereinafter* Order Denying Motion To Suppress]. In so ruling, the ALJ rejected Sturm Ruger's challenge to the legality of the DCI: "I find that by voluntarily filing its report, Respondent waived its objection to the way data was collected for the [DCI]. There is no suggestion that it was forced or misled into providing the data, and I find no other extenuating circumstances which might allow its challenge at this late date." Id. at 4.

Sturm Ruger sought interlocutory review of this decision, which the Commission denied. Sturm Ruger & Co., Nos. 99-1873, 99-1874, Letter from Executive Secretary of Commission, August 11, 2000. The administrative proceedings, therefore, remain pending. The ALJ has yet to issue a final decision on the merits, which may then be appealed to the Commission, and, in turn, any Commission decision is reviewable in the Circuit Court.

Concurrently, Sturm Ruger has proceeded in this Court, filing its complaint on May 9, 2000. Plaintiff brings this suit under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2), the OSH Act, and the Fourth Amendment to the United States Constitution, alleging that the DCI violates provisions of the APA and Sections 8 and 24 of the OSH Act, as well as its Fourth Amendment privacy interest in the information that the survey seeks to compel. Plaintiff argues that the DCI is invalid because it requires employers to provide certain information – the

average number of employees over the period specified and the number of hours that those employees worked – even though no OSHA regulation specifically requires employers to create and maintain such data. Plaintiff's contention is based on Section 24(e) of the OSH Act, 29 U.S.C. § 673(e), which provides that "[o]n the basis of the records made and kept pursuant to section [8(c)] of this Act [29 U.S.C. § 657(c)(2)], employers shall file such reports with the Secretary as he shall prescribe by regulation." Plaintiff argues that no regulation – including 29 C.F.R. § 1904.17 – authorizes OSHA to require employers to create and maintain the data that the DCI seeks. Based on these arguments, plaintiff seeks a declaratory judgment that the DCI is unlawful and injunctive relief against its enforcement.

Defendants raise three arguments in response. First, relying on the Supreme Court's decision in Thunder Basin Coal Co. v. Reich, 510 U.S. 200 (1994), they contend that the Court lacks subject matter jurisdiction over this action, because the administrative review process established by the OSH Act is the exclusive means by which plaintiff may challenge the DCI's legality. Alternatively, defendants argue that they are entitled to summary judgment because plaintiff's substantive claims are without merit. Defendants contend that plaintiff's APA and OSH Act claims are groundless because the APA requires that the Court defer to the Secretary's interpretation of the OSH Act as long as it is reasonable. Defendants argue that § 1904.17 is consistent with §§ 8 and 24 of the OSH Act, and that the establishment of the DCI is a reasonable interpretation of § 1904.17. Third, defendants argue that Sturm Ruger has no privacy interest in the information requested by the DCI, or even if the information is entitled to some protection, the Fourth Amendment permits the government to impose reasonable reporting requirements, such as those contained in the DCI.

7

The Court finds that it lacks jurisdiction over this action, since the OSH Act establishes an administrative review structure that precludes initial judicial review of plaintiff's claims. As a result, the Court need not reach plaintiff's claims under the APA, the OSH Act, or the Fourth Amendment.

## LEGAL ANALYSIS

### A.     Thunder Basin

In Thunder Basin, the Supreme Court articulated a standard for determining whether a district court could assume jurisdiction over a challenge to an agency's action where a statutory administrative procedure had been established.

> In cases involving delayed judicial review of agency actions, we shall find that Congress has allocated initial review to an administrative body where such intent is "fairly discernible in the statutory scheme." Whether a statute is intended to preclude initial judicial review is determined from the statute's language, structure, and purpose, its legislative history, and whether the claims can be afforded meaningful review.

Thunder Basin, 510 U.S. at 207 (quoting Block v. Community Nutrition Institute, 467 U.S. 340, 351 (1984)) (internal citations omitted).

Thunder Basin concerned a challenge to the actions of a federal Mine Safety and Health Administration (MSHA) official, who had instructed a coal mine operator to post information in accordance with a federal regulation passed pursuant to the Federal Mine Safety and Health Amendments Act of 1977. Rather than waiting for a citation from the MSHA and then challenging the agency's action through the administrative procedure provided for in the Act, the mine operator sought injunctive relief in district court. On appeal, the Supreme Court held that

"the statutory review scheme in the Federal Mine Safety and Health Amendments Act of 1977 prevents a district court from exercising subject matter jurisdiction over a pre-enforcement challenge to the Act." Id. at 202 (internal citations omitted).

Applying its test for determining Congress' intent, the Supreme Court first noted that the Mine Act "establishe[d] a detailed structure for reviewing violations of any mandatory health or safety standard, rule, order, or regulation promulgated under the Act." Id. at 207 (internal quotations omitted). The Court pointed to several factors in support of this argument. The Mine Act specified a time period of thirty days during which a mine operator could challenge any citation, directed that all challenges be heard by an ALJ, established the Federal Mine Safety and Health Review Commission (FMSHRC) as an independent body to review the ALJ's decisions, invested the sole power to impose penalties for violations of the Act in the FMSHRC, and granted mine operators the right to appeal adverse FMSHRC rulings to the appropriate court of appeals. Id. at 207-08. Moreover, the Act did not "distinguish between preenforcement and postenforcement challenges, but applie[d] to all violations of the Act and its regulations." And, the Mine Act expressly authorized district court jurisdiction in only two instances -- both of which could be initiated only by the Secretary, not by a mine operator. Id. at 208-09.

The Court found further support in the legislative history of the Mine Act for its holding that the administrative remedial scheme of the Act precluded initial judicial review of the agency's action. In particular, the Mine Act attempted to correct a system in which civil penalties for safety violations in United States mines "were not always mandatory and were too low to compel compliance, and enforcement was hobbled by a cumbersome review process. Congress expressed particular concern that under the previous Coal Act mine operators could

contest civil-penalty assessments de novo in federal district court once the administrative review process was complete, thereby seriously hampering the collection of civil penalties." Id. at 209-10 (internal quotations omitted). The Court concluded that the legislative history was "persuasive evidence that Congress intended to direct ordinary challenges under the Mine Act to a single review process." Id. at 211.

Finally, the Court held that the plaintiff's claims could be afforded "meaningful review" through the administrative process established in the Mine Act, for plaintiff's claims were within the scope of the statute's review provisions and the agency's expertise, and they could be meaningfully addressed by the Court of Appeals. See id. at 212-15.

### B.     Sturm Ruger's Claims

To determine whether this Court has subject matter jurisdiction, it applies the three-part test articulated in Thunder Basin. First, the Court finds that the language, structure, and purpose of the OSH Act support a holding that the administrative process is the exclusive remedy for claims that implicate the Act. As noted, the OSH Act has "an extensive administrative process for reviewing OSHA enforcement actions." In re Establishment Inspection of Manganas Painting Co., 104 F.3d 801, 802 (6th Cir. 1997); Northeast Erectors Ass'n of the BTEA v. Secretary of Labor, 62 F.3d 37, 39 (1st Cir. 1995). In fact, the administrative and judicial review procedures in the OSH Act are "nearly identical" to those in the Mine Act. Manganas Painting Co., 104 F.3d at 802 (quoting Northeast Erectors, 62 F.3d at 40). Both statutes specify a limited time period within which the employer may contest a citation, refer all such contests to ALJs, and grant employers the right to appeal adverse rulings to the Commission, and then to a Circuit Court. *Compare, e.g.*, 29 U.S.C. § 660(a) *with* 30 U.S.C. § 816(a)(1).

Furthermore, the OSH Act -- like the Mine Act -- authorizes original actions in district court in a finite number of situations – none of which includes an action by an employer. See 29 U.S.C. § 657(b) (actions by the Secretary to enforce administrative subpoenas); 29 U.S..C. § 660(c)(2) (actions by Secretary to enforce the antidiscrimination provisions of the OSH Act); 29 U.S.C. § 662(a), (d) (actions on behalf of the Secretary to restrain imminent dangers); 29 U.S.C. 666(1) (actions on behalf of the United States to recover civil penalties). Aside from these specific and limited exceptions, the administrative review process established by the OSH Act "is thus ordinarily regarded as the exclusive procedure through which an employer can obtain review of OSHA enforcement proceedings." Manganas Painting Co., 104 F.3d at 802 (quoting Northeast Erectors, 62 F.3d at 39).

Second, the Court looks to the legislative history of the OSH Act, which confirms this interpretation. Like the Mine Act, the OSH Act was intended "to reduce the number and severity of work-related injuries and illnesses," S. Rep. No. 91-1282, at 1 (1970), in response to a problem that, a Congressional Report noted at the time, "ranks in importance with any that engages the national attention today." Id. at 2. The legislative history of the OSH Act also indicates that Congress patterned much of the bill after the Mine Act, including the establishment of a similar administrative review scheme. See id. at 13, 15, 24.

Third, like the claims in Thunder Basin, plaintiff's claims are "'of the type Congress intended to be reviewed within this statutory structure,'" and can be afforded meaningful review

through that process.[1] Northeast Erectors, 62 F.3d at 40 (quoting Thunder Basin, 510 U.S. at 212). Although courts have "upheld district court jurisdiction over claims considered wholly collateral to a statute's review provisions and outside the agency's expertise, particularly where a finding of preclusion could foreclose all meaningful judicial review," Thunder Basin, 510 U.S. at 212 (internal quotations and citations omitted), plaintiff's claims are not collateral. Rather, they fall squarely within the scope of administrative review provided by the OSH Act. Plaintiff's statutory claims involve the legality of OSHA's actions undertaken pursuant to 29 C.F.R. § 1904.17. The OSH Act directs that such claims should be reviewed administratively. See Martin v. Occupational Safety and Health Review Comm'n, 499 U.S. 144, 154-55 (1991) (under the OSH Act, the Commission is authorized to review the Secretary's interpretations for consistency with the regulatory language); Molineaux v. United States, 12 F.3d 264, 267 (D.C. Cir. 1994) (same); Reich v. Occupational Safety and Health Review Comm'n, 998 F.2d 134, 137 (3d Cir. 1993) (same).

Plaintiff's constitutional claim also falls within the mainstream of the administrative review process established by the OSH Act. "[A]djudication of the constitutionality of congressional enactments has generally been thought beyond the jurisdiction of administrative agencies. The rule is not mandatory, however, and is perhaps of less consequence where, as here, the reviewing body is not the agency itself but an independent commission established exclusively to adjudicate [OSH Act] disputes." Thunder Basin, 510 U.S. at 215. *See also*

---

[1] Plaintiff has apparently recognized this, having raised the identical claims in its challenge to the citations that is currently pending before the OSHRC. See Order Denying Motion To Suppress at 3-4; Plaintiff's Memorandum in Opposition to the Government's Motion To Dismiss at 13-16.

12

Babcock & Wilcox Co. v. Marshall, 610 F.2d 1128, 1137 (3rd Cir. 1979) (holding that Fourth Amendment claims for the suppression of evidence in an OSHA enforcement case must be presented to the Commission, rather than in district court); Blocksom & Co. v. Marshall, 582 F.2d 1122, 1123-24 (7th Cir. 1978) (holding that a challenge to the constitutionality of the OSH Act in conjunction with the search of a manufacturing company must be brought before the Commission, rather than in district court). The OSHRC has addressed constitutional questions in prior proceedings. See, e.g., Georgia Pacific Corp. v. Occupational Safety and Health Review Comm'n, 25 F.3d 999 (11th Cir. 1994) (reviewing decision of the Commission that an OSHA standard was not unconstitutionally vague); McLaughlin v. Kings Island, Division of Taft Broadcasting Co., 849 F.2d 990 (6th Cir 1988) (reviewing decision of the Commission that an OSHA regulation authorizing the warrantless and nonconsenual search of business records violated the Fourth Amendment); Faultless Division, Bliss & Laughlin Industries, Inc. v. Secretary of Labor, 674 F.2d 1177 (7th Cir. 1982) (reviewing ruling by the Commission that a regulation passed pursuant to the OSH Act was not unconstitutionally vague). Moreover, even assuming arguendo that the agency could not provide adequate constitutional review, "petitioner's statutory and constitutional claims here can be meaningfully addressed in the Court of Appeals." Thunder Basin, 510 U.S. at 215.

This case therefore falls squarely within the holding of Thunder Basin. The language, structure and purpose of the OSH Act, the Act's legislative history, and the fact that plaintiff's claims can be afforded meaningful review according to the procedure specified in the Act all mandate that plaintiff challenge OSHA's actions through that process, rather than in district court.

Plaintiff's arguments to the contrary are unavailing. First, plaintiff misconstrues the holding in Thunder Basin by arguing that it is premised on the doctrine of exhaustion, and is therefore not jurisdictional but discretionary. Thunder Basin is not an exhaustion case. The Supreme Court's language is clear: "We conclude that the Mine Act's administrative structure was intended to preclude district court jurisdiction over petitioner's claims and that those claims can be meaningfully reviewed through that structure consistent with due process."[2] Thunder Basin, 510 U.S. at 218. As a result, a court has no discretion in determining whether to exercise subject matter jurisdiction, for, as this Court has concluded, the OSH Act prohibits review of plaintiff's claims by a district court.[3]

Second, plaintiff attempts to argue that administrative review is unavailable to challenge the legality and constitutionality of the DCI, since defendants have successfully prevented

---

[2] Other statements in Thunder Basin also unequivocally establish that the statute operates as a complete bar to jurisdiction. *See, e.g.*, Thunder Basin, 510 U.S. at 202 ("[W]e address the question whether the statutory-review scheme in the [Mine Act] prevents a district court from exercising subject matter jurisdiction over a pre-enforcement challenge to the Act. We hold that it does."); id. at 216 ("We conclude that the Mine Act's comprehensive enforcement structure, combined with the legislative history's clear concern with channeling and streamlining the enforcement process, establishes a fairly discernible intent to preclude district court review in the present case.").

[3] Plaintiff contends that in Shalala v. Illinois Council on Long Term Care, Inc., 529 U.S. 1 (2000), "the Supreme Court recognized that Thunder Basin was part of its judicially created exhaustion and ripeness doctrine." (Pl. Surreply at 4.) This statement is unsupported by even a cursory reading of Shalala. The Supreme Court cited Thunder Basin only once in Shalala – to affirm the distinction that the Court had repeatedly drawn between administrative systems that completely preclude review and those that merely postpone it. As the Court noted in describing Thunder Basin, the "strong presumption against preclusion of review is not implicated by [a] provision postponing review." Shalala, 529 U.S. at 19. In fact, this point contradicts plaintiff's argument. The Mine Act – like the OSH Act – expressly postpones judicial review until after a final decision by the administrative agency, at which time the Court of Appeals may address the case. Because judicial review is therefore merely postponed – rather than precluded – the Supreme Court is not concerned with the denial of a remedy for the petitioner.

14

plaintiff from contesting the DCI in both the administrative and judicial arenas. On the contrary, the administrative review process is the proper place for plaintiff to challenge the DCI, and the opportunity for review is available. In fact, Thunder Basin describes the procedure that plaintiff should use. There, the Supreme Court noted that the petitioner should refuse to comply with the agency's request, await a citation from the agency, and then challenge the citation according to the administrative procedure. Thunder Basin, 510 U.S. at 217-18. Similarly, Sturm Ruger should have refused to complete the DCI, and as suggested by the Supreme Court, awaited a citation and challenged the citation in an administrative proceeding. The fact that plaintiff did not follow this suggested procedure cannot be blamed on defendants. Moreover, plaintiff totally mischaracterizes the defendants' argument before the ALJ. The defendants did not argue that the legality of the DCI was unreviewable in the administrative process; rather, defendants' position, which was adopted by the ALJ, was limited to arguing that plaintiff had waived its objection to the DCI by completing the survey. (Defendants' Reply at 6-8.) Plaintiff's alleged waiver of its challenge to the DCI in the administrative process is entirely separate from and unrelated to the question of whether this Court has jurisdiction over that challenge. Even if it is assumed that plaintiff has waived its claim in the administrative forum, this cannot operate to vest jurisdiction in this Court, for subject matter jurisdiction is not dependent on plaintiff's success in an administrative proceeding.[4]

---

[4] In support of its argument that this Court should assume jurisdiction because administrative review of plaintiff's challenge to the DCI is unavailable, Sturm Ruger cites Chamber of Commerce v. United States Dep't of Labor, 174 F.3d 206, 209 (D.C. Cir. 1999). That case, however, is inapposite. That case addresses the distinction between an OSHA "standard" and a "regulation" for jurisdictional purposes, and is not relevant to the Thunder Basin analysis. Like Chamber of Commerce, Workplace Health & Safety Council v. Reich, 56 F.3d
(continued...)

Finally, plaintiff asserts that this case is procedurally indistinguishable from ATA, in which the Court assumed jurisdiction over a challenge to the DCI without addressing Thunder Basin. In ATA, however, the DCI – as OSHA admitted at the time – was based on neither the OSH Act nor any regulation passed pursuant to it. ATA, 955 F. Supp. at 6. As a result, plaintiff's claim did not implicate any potential violation of the OSH Act or its regulations, and the Act's administrative review system was therefore irrelevant.[5] Instead, the Court took jurisdiction under the doctrine that the DCI was "final agency action, and thus ripe for review" under 5 U.S.C. § 704. Id. at 7. The OSH Act was not implicated.

## CONCLUSION

For the above reasons, allowing plaintiff's claims to be raised in district court would subvert Congress's intent in providing for a comprehensive scheme of administrative review as part of the OSH Act. Under the doctrine established by the Supreme Court in Thunder Basin, this case must be dismissed for lack of subject matter jurisdiction. Because this Court lacks subject matter jurisdiction over the case, defendants' other arguments need not be addressed.

_____
ELLEN SEGAL HUVELLE
United States District Judge

DATE: 2/13/01

---

[4](...continued)
1465 (D.C. Cir. 1995), on which plaintiff also relies, addresses the standard/regulation issue and is similarly inapplicable.

[5] As the Government acknowledged at the time, the Act's administrative review scheme – and, hence, Thunder Basin -- would have been implicated had the plaintiff waited until receiving a citation for failing to complete the DCI, and then challenged the citation. Plaintiff did not do that, and as a result, the OSH Act was not implicated by its claims. (Pl. Mem., Ex. A at 14 n.20.)